UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENNETH LEE MCKIM                         CIVIL ACTION

VERSUS                                        NO. 13-364-SDD-RLB

CAROLYN COLVIN,
ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 22, 2014.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KENNETH LEE MCKIM** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-364-SDD-RLB** |
| **CAROLYN W. COLVIN,**<br>**ACTING COMMISSIONER**<br>**OF THE SOCIAL SECURITY**<br>**ADMINISTRATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Kenneth Lee McKim (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits based on the following impairments: diabetes, declining and partial blindness/diabetic retinopathy, severe joint pain and stiffness/limited mobility, high blood pressure, and depression. (R. Doc. 1); (Tr. 1-3, 59-71, 160).[1] Having found all of the procedural prerequisites met (Tr. 1-6), the Commissioner's determination is now ripe for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner should be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with** prejudice.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R §

404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, after reviewing the evidence contained in the administrative record (Tr. 21-24), the ALJ made the following determinations:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015 — the last day he would remain insured.

2. Plaintiff has not engaged in substantial gainful activity since October 28, 2010, the alleged onset date.

3. Plaintiff has the following severe impairments: diabetes mellitus; essential hypertension; and discogenic and degenerative disorders of the back. Plaintiff's depression, however, is not a severe impairment.

4. Plaintiff does not have an impairment (or combination of impairments) that meets or medically equals a listing — specifically, Listing 1.00 (Musculoskeletal System), Listing 4.00 (Cardiovascular System), or Listing 9.00 (Endocrine Disorders).

5. Plaintiff has the residual functional capacity (RFC) to perform light work except that Plaintiff: can never climb ladders, ropes and scaffolds; may occasionally climb ramps and stairs, and perform stooping, kneeling, crouching, and crawling; and must avoid concentrated exposure to extreme heat, wetness, and humidity.

6. Plaintiff is capable of performing his past relevant work (PRW) as a construction estimator.[2]

(Tr. 13-19).

---

[2] According to the Dictionary of Occupational Titles, an estimator (or construction estimator) performs the following job functions:

> Analyzes blueprints, specifications, proposals, and other documentation to prepare time, cost, and labor estimates for products, projects, or services, applying knowledge of specialized methodologies, techniques, principles, or processes: Reviews data to determine material and labor requirements and prepares itemized lists. Computes cost factors and prepares estimates used for management purposes, such as planning, organizing, and scheduling work, preparing bids, selecting vendors or subcontractors, and determining cost effectiveness. Conducts special studies to develop and establish standard hour and related cost data or effect cost reductions. Consults with clients, vendors, or other individuals to discuss and formulate estimates and resolve issues.

DICOT 169.267-038, 1991 WL 647453 (4th ed. 1991).

## IV. DISCUSSION

Plaintiff only raises one assignment of error: "Plaintiff urges that he is unable to return to his past work because of loss of near vision. The ALJ decision addresses only plaintiff's distant vision scores and finds that plaintiff can perform past work." (R. Doc. 10 at 1). Plaintiff's application for disability at the administrative level alleged "declining and partial blindness/diabetic retinopathy." (Tr. 63). Plaintiff claims before this Court that it is his "loss of near visual acuity" that would otherwise result in a finding of disability if it were supported by the medical evidence of record. (R. Doc. 10 at 3). And so, he suggests a remand is warranted because, "[t]here is no expert testimony that plaintiff's near visual acuity is sufficient to return to past work. Plaintiff can no longer afford to have such testing undertaken, and the ALJ ha[d] a duty to develop the record." (R. Doc. 10 at 3).

The most recent eye exams found in the record are from a July 30, 2010 appointment with optometrist, Dr. Ann Rhodes, (Tr. 256, 267-68)[3] and his June 9, 2011 consultative examination with Dr. Barnabas Fote (Tr. 285-88). Dr. Rhodes reported in July of 2010 that Plaintiff's best correct visual acuity was 20/40 on the left and 20/50 on the right. (Tr. 267). In June of 2011, Dr. Fote found Plaintiff's best corrected visual acuity remained 20/40 on the left, but was 20/70 on the right. (Tr. 286). Both physicians used the Snellen methodology to test Plaintiff's best overall visual acuity with correction — the same methodology used by the Social Security Administration to evaluate visual impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 2.00A(5)(a) (explaining how the SSA evaluates a person's "best-corrected visual acuity"). Based on Dr. Rhodes' and Dr. Fote's exams, as well as the other record evidence, the ALJ found

---

[3] The ALJ refers to Dr. Michael Fajoni as being the author of Dr. Rhodes' medical records. (Tr. 16). This appears incorrect. While a request for Plaintiff's medical records was addressed to Dr. Michael Fajoni of Eye Physicians and Surgeons, Inc. (Tr. 265), the actual records produced in response to that request were signed by Dr. Ann Rhodes (Tr. 267-68).

Plaintiff's allegations of visual "distortion" (Tr. 36), and an inability to "see [out of his right eye] to read or drive" (Tr. 37) were not credible (Tr. 16); and did not prevent him from returning to his past relevant work (Tr. 16-17). Plaintiff, however, insists that neither Dr. Rhodes' nor Dr. Fote's exams were sufficient because they overlooked the true severity of his visual impairment, and neither tested his near vision, which he now claims prevents him from working. Alternatively, Plaintiff claims that if the reports of Dr. Rhodes and Dr. Fote do not support his allegations, then it is because his visual impairment must have "gotten worse" since these exams. And because there are no more recent medical records in the administrative record, the ALJ was obligated to order an additional consultative vision exam to determine the effect of his near vision on his ability to work. Plaintiff's argument, however, is unavailing for several reasons.

To begin, Plaintiff now harps on his "loss of near visual acuity" (R. Doc. 10 at 3), but the majority of his complaints at the administrative level focused on the distortion of his overall vision — and not his near vision. (Tr. 35-36) ("Shortly after . . . is when my right eye started with distortions. The moon would be oblong, and the lines on the interstate would be staggered . . ."); (Tr. 48, 50) (Plaintiff claims he can't work because the "problem is with the distortion in my right eye."); (Tr. 51) (discussing distorted vision in right eye and explaining that it prompted him to see Dr. Rhodes in July of 2010). Despite what Plaintiff now argues on appeal (R. Doc. 10 at 3), it is likewise clear from the hearing that he and his attorney felt an additional consultative exam should be ordered to assess the alleged distortion of his vision rather than his near vision. (Tr. 48, 51) (discussing his distorted vision, Plaintiff said he was "really surprised" and "amazed that that wouldn't have shown" in his medical records); (Tr. 48) (Plaintiff's attorney asked for additional consultative exam to address distortion). While Plaintiff did mention his difficulties seeing up close (Tr. 40, 41), these isolated comments were insufficient to trigger any obligation

7

on the ALJ's part to order another consultative examination. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) ("[A] few instances in the record noting diminished intelligence do not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record.").

Turning to the lack of supporting medical evidence Plaintiff complains of, this is a direct result of his actions, not any error made by the ALJ. Plaintiff had the obligation to establish his alleged disability. This means Plaintiff must furnish medical and other evidence that the ALJ can use to reach conclusions about his medical impairment and its effect on his ability to work on a sustained basis. 20 C.F.R. § 404.1512(a). Plaintiff did not fulfill his obligation. Despite the alleged severity of his visual impairment and the recommendations of numerous healthcare providers (Tr. 265, 267), Plaintiff has continuously failed to seek treatment for his vision. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ may rely on claimant's lack of treatment where record does not excuse lack of treatment or otherwise support disability); *Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (a gap in treatment can itself be relevant evidence that the claimant's impairment is less severe than alleged).

The Commission sent Plaintiff for a consultative exam to determine the extent of his vision and other impairments in June of 2011. (Tr. 285-88). About a year earlier, Dr. Rhodes examined Plaintiff's eyes and updated his eyeglass prescription (Tr. 267-68) for the first time in "about five years." (Tr. 35). Dr. Rhodes then referred him to Dr. Fivgas for additional treatment, and recommended that he annually obtain a follow up vision exam. (Tr. 267). Dr. Rhodes also noted that Plaintiff had not sought treatment for his vision since 2008 and that she stressed to him the importance of regular treatment. (Tr. 267). But despite insisting that his condition has progressively worsened, Plaintiff acknowledged at his March 21, 2012 hearing that it had been

"probably . . . two and a half years," since Dr. Rhodes examined his vision and referred him to Dr. Fivgas, but he had yet to receive any type of follow up care from Dr. Fivgas or otherwise seek treatment for his visual impairment. (Tr. 36)[4] According to Plaintiff, he never made a follow-up appointment because:

> "It was right around hurricane season, and we had some family commitments. And then with hurricane season, it was something that they didn't really want to do. So it was easy to put off and I haven't done it yet. . . . But [also] my left eye hasn't gotten to the point where it bothers me enough . . . – basically if it's not broke don't fix it."

(Tr. 36).

On appeal to this Court, Plaintiff claims that he could not afford follow up care, which accounts for his lack of treatment. (R. Doc. 10 at 1-3). While, hurricane season and family commitments were among the excuses Plaintiff offered for his lack of visual treatment (Tr. 36), the financial concerns cited in his Memorandum have not been previously mentioned.[5] Finally, Plaintiff's attorney informed the ALJ that if the record did not support his inability to see, he believed that supporting medical evidence existed and would try to supplement the record. (Tr. 30) ("If not, I will get it for you."). Plaintiff's attorney, however, did not provide any further evidence of Plaintiff's visual impairment. Considering this, Plaintiff cannot claim that the record is under developed because of the ALJ. *See Jernigan v. Sullivan*, 997 F.2d 881, at *4 & n.8 (ALJ

---

[4] Plaintiff also previously insisted that this lack of treatment stemmed from his reluctance to undergo another surgery, which he believed could potentially cause further damage to his vision. (Tr. 36). However, the damage alleged is not supported by the record. Moreover, Plaintiff was recommended treatment other than surgery. A fear of surgery does not excuse Plaintiff's failure to obtain regular eye care or go years without updating his eyeglass prescription, as recommended by his healthcare providers.

[5] The Court notes that a genuine inability to afford treatment should never be used to deny benefits to an otherwise disabled individual. *Sanders v. Apfel*, 136 F.3d 137, *1 (5th Cir. 1998) (an "inability to afford" treatment "should not be used to show" a claimant is not disabled). Plaintiff has previously mentioned difficulties in paying for certain medications associated with his hypertension. (Tr. 46, 213). But as for his visual impairment, financial concerns have not been among his otherwise consistent excuses for not seeking preventative treatment or having surgery, despite his doctors' recommendations.

9

did not err in refusing to order additional consultative exam where record did not support disability and plaintiff raised inability to afford treatment for first time on judicial appeal).

Additionally, the record does not support the degree of severity alleged by Plaintiff concerning his visual limitations, nor does it support a worsening of claimant's condition sufficient to warrant an additional consultative examination. Plaintiff testified that he regularly drives, reads, answers email and watches TV during the day. (Tr. 40-41). These activities do not indicate that Plaintiff's eyesight prevents him from obtaining gainful employment. *See Konkol v. Barnhart*, 75 F. App'x 529, 533-34 (7th Cir. 2003) (claimant's visual impairment was not disabling, where claimant said he "still drives, hunts, shaves, and mows the lawn"); *Rehr v. Barnhart*, 431 F. Supp. 2d 312, 320 (E.D.N.Y. 2006) (substantial evidence supported denial of benefits based on visual impairment where plaintiff was still capable of driving). The degree of severity alleged by Plaintiff is also contradicted by his testimony that, before June of 2010, he had not updated his eyeglass prescription in 5 years (Tr. 35). Plaintiff claimed that his new prescription allowed him to see more clearly out of his left eye. (Tr. 38). In other words, Plaintiff's vision on the left was better than it had been during the last 5 years of his employment.

Concerning his past work as a construction estimator, Plaintiff testified that he started having difficulty about 5 years ago when his company began using computers to review blueprints instead of physical copies. (Tr. 34-35, 50-51). Overall, Plaintiff explained it was more difficult to do his job on a computer because the screen only allowed him to view a small portion of the blueprint as a time and that his eyes felt like "sandpaper" while looking at a computer screen. (Tr. 34-35). This made it more difficult to check his work and resulted in an inefficient use of time. (Tr. 34-35, 50-51). But as the ALJ pointed out, any limitation in working appeared

to result from Plaintiff's frustration with his computer, more than any visual impairment. (Tr. 50). Plaintiff's alleged visual limitations that prevent him from using a computer are also contradicted by record evidence that he regularly read, answered e-mails (Tr. 40), and denied having dry eyes to Dr. Gauthier on October 14, 2011 (Tr. 325). Moreover, Plaintiff was still working as of his original alleged onset date of October 28, 2010 (Tr. 59-61) and only stopped working on January 21, 2011 after being laid off (Tr. 192, 198, 200, 325).

Plaintiff also claims that the record needs further development because Dr. Rhodes' and Dr. Fote's exams do not support his loss of near visual acuity or his distorted vision. Plaintiff is correct that the exams of Dr. Fote and Dr. Rhodes do not support the severe limitations he alleges. However, both exams are consistent with the record as a whole, including Plaintiff's daily activities of driving, reading and answering emails, as well as the observations of other medical providers. For example, Dr. Ted Hudspeth noted on April 23, 2010 that Plaintiff reported his "visual acuity [was] fine." (Tr. 264). Dr. Hudspeth did not indicate the presence of any visual problems and his examination found Plaintiff's eyes were normal. (Tr. 265). Similarly, Dr. Culver noted on July 20, 2011 that Plaintiff read the consent form at his office, without help, by moving "the page close to his eyes." (Tr. 294). This contradicts Plaintiff's insistence that his near vision prevents him from working. Dr. Culver also reported that the "smallest letters on the consent form were perceptible" to Plaintiff and that he did not believe Plaintiff's eyes prevented him from undergoing testing. (Tr. 294-95). The record as a whole clearly does not support the degree of limitations alleged by Plaintiff. The Social Security Act "does not require an ALJ to reconcile the irreconcilable." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Plaintiff insists that he cannot see well enough to work, but there is

substantial evidence in the record to support that he can. The ALJ resolved these inconsistencies appropriately and her decision to deny benefits is supported by substantial evidence.

The record also does not indicate that the examinations of optometrist, Dr. Rhodes, or consultative examiner, Dr. Fote, were not comprehensive. Plaintiff claims that neither doctors' examination is reliable because his near vision was not tested using the Jaeger methodology, which tests near vision. (R. Doc. 10 at 3). Plaintiff's argument, however, is unavailing as both doctors tested Plaintiff's vision using the Snellen methodology — the method used by the Social Security Administration to determine a claimant's best-corrected visual acuity for assessing visual impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 2.00A(5)(a) (explaining how the SSA evaluates a person's "best-corrected visual acuity"). Moreover, despite Plaintiff's allegations, Dr. Rhodes comprehensively tested his vision, prescribing him "trifocal" lenses that corrected his distant, near, and intermediate vision. (Tr. 267).

An ALJ's duty to undertake a full inquiry "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). Ultimately, Plaintiff bore the burden of proving his vision impairment, including his near vision, affected his ability to engage in work-related activities. While there is evidence that Plaintiff's vision is not perfect, the record does not contain any evidence of any work-related limitations caused by Plaintiff's vision or near vision. Given Plaintiff's consistent failure to obtain treatment and the lack of evidence that supports the alleged severity or worsening of his condition, the ALJ properly declined to order an additional consultative examination. The ALJ's failure to consider at length Plaintiff's near vision was likewise not erroneous where the evidence did not support an impairment of Plaintiff's near vision and the

majority of Plaintiff's complaint concerned the distortion of vision in his right eye. *Herrera v. Colvin*, No. 11-881, 2013 WL 1286647, at *4-5 (N.D. Tex. March 28, 2013) (ALJ decision supported by substantial evidence despite ALJ not mentioning alleged impairment of near vision where record evidence did not support the visual limitations alleged by plaintiff).

Instead, the ALJ considered the entire record before making an informed decision, supported by substantial evidence. *Moore v. Soc. Sec. Admin.*, 153 F. App'x 945, 946-47 (5th Cir. 2004) (where medical records did not support the existence of a disability, ALJ had no duty to order additional testing of unsupported impairment alleged by plaintiff); *Gallardo v. Barnhart*, 32 F. App'x 131, at *2 (5th Cir. 2002) (Rejecting argument that ALJ erred in not ordering additional consultative exam where multiple exams in the record do not support disability and plaintiff "has not cited or applied relevant legal standards to explain why the ALJ's refusal to authorize an additional consultative examination was an abuse of discretion."); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (rejecting plaintiff's argument "that the passage of time between the consultative examination on the record and the hearing demonstrates the need for another consultative examination" where the ALJ appropriately determined that the condition plaintiff claimed had worsened was not supported by the record); *Poyck v. Astrue*, 414 F. App'x 859, 862 (7th Cir. 2011) (Given the record did not support the degree of limitations alleged and "the lack of any evidence that Poyck's condition had deteriorated, the ALJ did not abuse his discretion in determining that an additional consultative examination was unnecessary."); *Carroll v. Barnhart*, 291 F. Supp. 2d 783, 795 (N.D. Ill. 2003) ("Because there was no medical evidence to support a swelling of her knees, this Court defers to the ALJ's conclusion that an additional consultative examination was not necessary."); *Mynhler v. Colvin*, No. 13-45, 2014 WL 1331057, at *4 (E.D. Ky. March 31, 2014) (plaintiff "provided no basis for requiring that the

ALJ order another consultative examination on top of the one performed" where the exam performed did not support the limitations alleged).

## V. RECOMMENTATION

For the reasons given above, the Court recommends that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on July 22, 2014.

							_____
							**RICHARD L. BOURGEOIS, JR.**
							**UNITED STATES MAGISTRATE JUDGE**